# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GOLDWIRE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV413-064 |
| JIMMY MCDUFFIE, *Sheriff*; A. BROWN, *Captain*; PROVOST, *Corporal*; RONDA DOE, *Nurse*; and WARD, *Corporal*; | ) ) ) ) ) ) | |
| Defendants.[1] | ) | |

## REPORT AND RECOMMENDATION

Inmate-plaintiff Christopher Goldwire, who is proceeding *in forma pauperis* ("IFP"), has filed a complaint pursuant to 42 U.S.C. § 1983 contending that he was denied proper medical care at a local jail. (Doc. 1.) The Court must now screen his complaint to determine whether he has stated a cognizable claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring a district court to dismiss *sua sponte* an IFP complaint that fails to state a claim for relief, is frivolous or malicious, or seeks monetary

---

[1] The Clerk listed Officer Reinheart as a defendant, but his name was crossed out of the complaint's caption prior to its filing. Accordingly, the Clerk is **DIRECTED** to delete Reinheart as a party.

relief from a defendant immune from such relief); *see also* 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(2).

Goldwire contends that he slipped and fell early one morning when waste water flooded his cell after some unspecified plumbing malfunction at the Effingham County, Georgia Jail. (Doc. 1 at 3.) A guard asked him whether he was injured. (*Id.*) He reported that he was not. (*Id.*) A few minutes later, however, he noticed that his left hand had started to swell and was "throbbing in pain." (*Id.*) After he reported the injury, jail officials took him to the front booking area for medical observation. (*Id.*) He stayed there for a few hours, begging to be taken to the emergency room. (*Id.*) At some point, Corporal Ward contacted the weekend nurse, Ronda Doe, who told Ward not to take Goldwire to the emergency room. (*Id.*) Later that morning, nurse Doe arrived and examined the injury.[2] (*Id.*) She confirmed that Goldwire did not need to be taken to the

---

[2] There is a bit of a temporal discrepancy here. Read in context, it appears that he was injured at about 6:45 a.m. on January 28, 2013, taken to the booking area for monitoring about 15 minutes later, and then was seen by the weekend nurse a few hours later, at 9:45 a.m. (Doc. 1 at 3.) At one point, however, he states that the flooding occurred at 6:45 a.m. on January 27, 2013 and that he wasn't seen by a nurse until 9:45 a.m. the following morning. Either way, the Court finds that Goldwire fails to state a claim for relief.

2

emergency room for an x-ray, then provided him with medication to relieve his pain. (*Id.*)

Goldwire seeks compensatory and punitive damages totaling $1,000,000. (*Id.* at 5.) He also wants a declaratory judgment and an injunction forcing the Effingham County Jail to keep a 24-hour medical staff. (*Id.* at 5.) Because he has failed to offer any facts suggesting that he suffered from more than a run-of-the-mill sprain, Goldwire has not shown that he is entitled to relief under § 1983.

The Eighth Amendment's proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[3] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective

---

[3] It is unclear whether Goldwire was a prisoner or a pretrial detainee at the time of the incidents alleged in his complaint. Goldwire's custodial status is of no significance to the Court's analysis, however, for it is well settled that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights").

3

inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). "First, a plaintiff must set forth evidence of an objectively serious medical need." *Farrow*, 320 F.3d at 1243; *Taylor*, 221 F.3d at 1258; *Adams*, 61 F.3d at 1543. "Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow*, 320 F.3d at 1243; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). And as is true in all tort actions, the plaintiff must also establish that the defendant's indifference caused his injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

A prisoner's medical need is considered "serious" if he establishes that it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow*, 320 F.3d at 1243 (citations omitted). The objectively serious need "must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Id.*

4

(citation omitted). Under the subjective component, "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *McElligott*, 182 F.3d at 1255 (quoting *Lancaster*, 116 F.3d at 1425)); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) ("knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

Goldwire has not alleged that he suffered anything more serious than a common sprain. Not every sprain resulting from a slip and fall -- even if quite painful when it first occurs -- requires urgent medical attention or any treatment whatsoever (beyond, perhaps, the application of an ice pack to help reduce swelling, which plaintiff admits he received from the nurse on duty). *See, e.g., Dotson v. Corr. Med. Serv.*, 584 F. Supp. 2d 1063 (W.D. Tenn. 2008) (ankle sprain not serious medical need); *Bacon v. Harder*, 248 F. App'x 759 (7th Cir. 2007) (ankle sprain not serious medical condition); *Galego v. Scott*, 2011 WL 6752563 (D. Nev. Sept. 8, 2011) (bone spurs and mild arthritic changes in ankle not serious medical condition); *Doumin v. Carey*, 2008 WL 4241075 (N.D.N.Y. Sept. 12, 2008)

(twisted ankle not a serious medical need); *Johnson v. Kachelmeyer*, 2006 WL 625837 at *9 (W.D.N.Y. Mar.9, 2006) (ankle sprain with several contusions not sufficiently serious medical condition); *Chatin v. Artuz*, 1999 WL 587885 at *3 (S.D.N.Y. Aug.4, 1999) (soft-tissue swelling without ankle dislocation or fracture, and subsequent diagnoses of a bone spur, neuroma, and tendinitis, not sufficiently serious to warrant protection under the Eighth Amendment).

Goldwire has not alleged the type of serious medical need that warrants Eighth Amendment scrutiny. But even if he *did* suffer a serious injury, nothing in the complaint suggests that the officers were deliberately indifferent to that need. They promptly removed him from his cell for medical observation. Ward called the nurse before she arrived to determine whether he needed to be taken to the emergency room. And Nurse Doe's preliminary determination that he did not require urgent care was borne out by her later examination.[4]

---

[4] The Court acknowledges that even if "medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott*, 182 F.2d at 1255; *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533,

Goldwire also faults Corporal Ward for making him take his pain medication on an empty stomach, which caused him to vomit and then pass out. (Doc. 1 at 3-4.) He claims that he screamed for help, but no one came. (*Id.*) Corporal Provost, who was on duty at the time, allegedly refused to offer any assistance despite hearing his cries because she was alone and could not open the cell door for her own safety. (*Id.*) Goldwire nevertheless faults her for failing to call an officer to assist her. (*Id.*)

His claim against Ward fails, since the complaint indicates that Ward was simply deferring to Nurse Doe's medical judgment for what appeared to be a relatively minor injury. Moreover, he has failed to show that he suffered a serious medical need at the time he requested help from Provost. It is clear from the complaint that he did not call for help until *after* he had "passed out" and regained consciousness. (Doc. 1 at 3.) Provost declined to open the cell door without the aid of an additional guard. (*Id.* at 4.) Nothing in the complaint suggests that was

---

1537-39 (11th Cir. 1990). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257. Goldwire, however, has not pled any facts suggesting that he actually had a serious medical need. All he describes is swelling and pain, the kind of symptoms that accompany the average sprain, and no permanent injury.

7

unreasonable. Goldwire had simply vomited after taking pain medication, which hardly suggests that he was in the throes of some serious illness requiring urgent medical care. (*Id.*) As with the sprain, many people daily suffer through stomach pain and nausea set off by medication without seeking medical attention. Also notably absent from his complaint is any explanation as to what aid Provost could have rendered had she immediately entered his cell. (*Id.*)

Finally, Goldwire has not made any allegations whatsoever against Sheriff McDuffie or Captain Brown. At best he is pursuing them simply for their supervisory oversight of the jail. Claims brought pursuant to § 1983, however, cannot be based upon theories of vicarious liability or *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Rather, Goldwire must demonstrate either that these supervisory defendants directly participated in the alleged constitutional deprivations or that there is some other causal connection between their acts or omissions and the alleged constitutional deprivations. *Cottone v.*

*Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam). Goldwire has not offered any facts showing direct action or some other causal connection as to these defendants.[5]

For the reasons explained above, this case should be **DISMISSED**. Meanwhile, Goldwire must pay the filing fee for this lawsuit. Based upon his furnished information, he owes a partial filing fee of $1.68. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's account custodian

---

[5] While Goldwire filed a grievance which he appealed to McDuffie, McDuffie's knowledge that he had lodged a grievance about his medication, standing alone, is insufficient to state a claim against him. Merely filing grievances with, or sending complaining letters to, a supervisory official does not make him liable for the allegedly violative conduct, even if the grievance or complaint is denied. *See Wayne*, 197 F.3d at 1106; *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Prison administrators receive mountains of letters and grievances on a regular basis complaining about everything under the sun. When the complaining person has been seen and treated by a medical professional, the administrators are entitled to rely upon the medical professional's assessment. Thus, the fact that Goldwire filed a grievance does not establish the type of direct participation or causal connection required here. Instead, he must allege sufficient facts demonstrating that the defendants somehow caused or ratified the deprivations, not that they were generically aware of his complaints. He has not done so. Accordingly, his claims against McDuffie and Brown fail.

shall remit that amount to the Court and shall set aside 20 percent of all future deposits to the account and forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this Order and a copy of the Consent to Collection of Fees from Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO REPORTED AND RECOMMENDED** this __15th__ day of August, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA